# EXHIBIT A

## THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Beyond Finance, LLC,<br>FS Capital Partners LP,<br>KCK Ltd.,<br><br>　　　　　　　Claimants,<br><br>　　v.<br><br>Grant Eckert,<br><br>　　　　　　　Respondent. | § AAA Case No. 01-24-0002-3794<br>§<br>§<br>§<br>§<br>§ **Summons**<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

### ARBITRATION SUMMONS TO PRESENT DOCUMENTARY EVIDENCE AT IN-PERSON HEARING

To:  Identity Intelligence Group, LLC ("IDIQ") and IDIQ subsidiary: Credit Swag Ventures, Inc.

43454 Business Park Drive
Temecula, California
92590

　　By the authority conferred on the undersigned arbitrator by Section 7 of the United States Arbitration Act (9 U.S.C. § 7), YOU ARE HEREBY COMMANDED to appear in-person at a hearing before the undersigned arbitrator at Hilton Los Angeles Airport, 5711 West Century Boulevard, Los Angeles, California, 90045 on July 8, 2025, at 11:00 a.m. PST to bring with you to the hearing the documents identified in Schedule A attached to this SUMMONS.

　　Provided that this SUMMONS has been served upon you in the same manner as is required of a judicial subpoena under Rule 45 of the Federal Rules of Civil Procedure, then if you shall refuse or neglect to obey this SUMMONS, upon petition the United States District Court for the Northern District of Texas may punish you for contempt in the same manner provided by law for neglect or refusal to comply with a subpoena in the courts of the United States.

　　You may address questions concerning this SUMMONS to the attorneys or Case Manager identified below.  Any application by you to quash or modify this SUMMONS in whole or in part should be addressed to the arbitral tribunal in writing, with copies to counsel for the parties, except that a motion upon the ground that the SUMMONS is unenforceable under Section 7 of the Federal Arbitration Act may also be addressed to the United States District Court for the Northern District of Texas.
　　The attorneys for Claimants in this arbitration are McDermott Will & Emery LLP (c/o Brian Mead), 444 West Lake Street, Suite 4000, Chicago, IL 60606-0029, (312) 984-6908, bmead@mwe.com.


The attorneys for Respondent in this arbitration are Funk Law LLC (c/o Andrew Funk), 1600 Genessee, Suite 860, Kansas City, MO 64102, (816) 348-3002, andrew@frlawkc.com; Coppaken Law Firm (c/o Jeff Coppaken), 10484 Marty St, Overland Park, KS 66212, (913) 802-2130, jeff@coppakenlaw.com.

The Case Manager is Kalee Jones, KaleeJones@adr.org, (470) 300-7397.

Dated: June 5, 2025

Signed: _____
Arbitrator
Brian D. Benweim

Requested by: MCDERMOTT WILL & EMERY LLP

Dated: June 5, 2025

      /s/ Brian A. Mead
_____

Joseph K Mulherin (jmulherin@mwe.com)
Brian A. Mead (bmead@mwe.com)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606

David M. Genender (dgenender@mwe.com)
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, TX 75210

*Counsel for Claimants*



## ATTACHMENT A

The following Definitions apply throughout, regardless of whether upper-case or lower-case letters are used.

1. "You" or "Your" refers to Identity Intelligence Group, LLC ("IDIQ") and IDIQ's subsidiaries, including Credit Swag Ventures, Inc., and any representative, attorney, agent or other person or entity acting on its/their behalf.

   a. **For the avoidance of any doubt, Jeffrey ("Jeff") Mandel is a representative, employee, or agent acting on behalf of IDIQ and/or an IDIQ subsidiary, as defined in Definition 1, and is contemplated by "IDIQ" and "Identity Intelligence Group, LLC."  Requests that include "IDIQ" and "Identity Intelligence Group, LLC" and not "Jeffrey ("Jeff") Mandel" should not be read as excluding "Jeffrey ("Jeff") Mandel from the Definition of "IDIQ" and "Identity Intelligence Group, LLC."**

2. "Claimants" or "Beyond Finance, LLC" or "Beyond," "FS Capital Partners LP" or "FS Capital Partners," or "KCK Ltd." or "KCK," means those named entities and/or any past or present officers, directors, partners, employees and/or agents of said named entities, and/or all divisions, subsidiaries, parents, affiliates, related or predecessor companies of said named entities, or any of them.

3. "Arbitration" means this arbitration action (AAA Case No. 01-24-0002-3794) commenced by Claimants' a Demand for Arbitration.

4. "Americor" means Americor Funding, LLC and/or any of its past or present partners, directors, members, consultants, shareholders, agents, officers, employees, and/or

3

representatives, and/or all divisions, subsidiaries, parents, affiliates, related or predecessor companies, or any of them, and/or anyone else acting on its behalf.

5. "DataLab" means DataLab USA, LLC and/or any of its past or present partners, directors, members, consultants, shareholders, agents, officers, employees, and/or representatives, and/or all divisions, subsidiaries, parents, affiliates, related or predecessor companies, or any of them, and/or anyone else acting on its behalf.

6. "Nahan" means Nahan Printing, Inc. and/or any of its past or present partners, directors, members, consultants, shareholders, agents, officers, employees, and/or representatives, and/or all divisions, subsidiaries, parents, affiliates, related or predecessor companies, or any of them, and/or anyone else acting on its behalf.

7. "Marketing" has the broadest possible meaning and shall be construed to have both its plain and ordinary meaning and any industry-specific, term-of-art meaning. "Marketing," includes the process or technique of promoting, selling, and distributing a product or service directly and indirectly.

8. "Retention Marketing" encompasses the definition of "Marketing (defined above) and has the broadest possible meaning and shall be construed to have both its plain and ordinary meaning and any industry-specific, term-of-art meaning. "Retention Marketing," includes the process or technique of promoting, selling, and distributing a product or service for the purpose of retaining a customer or client directly or indirectly.

9. "Data" means any tangible or electronically stored information in any form that belongs to, or is entrusted to, or is about Beyond and/or any of its customers, past or present partners, directors, members, consultants, shareholders, agents, officers, employees, and/or

representatives, and/or all divisions, subsidiaries, parents, affiliates, related or predecessor companies, or any of them, and/or anyone else acting on its behalf.

10. "Communicate" and "Communication" means the transmittal of information in any form and by any means. A Communication may include, among other examples, in-person or remote meetings, requests for information, responses to requests for information, letters, emails, electronic chat messages, text messages, WhatsApp messages, Signal messages, mailings, voicemails, physical and electronic calendar entries, and in-person, videoconference, or telephone conversations, whether intended to or actually conveying information or data.

11. "Employee" shall be construed to apply to both current and former employees, contractors, independent contractors, and interns, and shall apply to anyone currently performing or anyone who at one time performed work for the entity or person, whether paid or unpaid.

12. "Document" and "Documents" shall have the broadest possible meaning permitted by law and includes any written or recorded matter of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, in the possession, custody or control of You or Your attorneys or agents. This shall include, but not be limited to, writings, electronic mail or other electronic Communications, facsimile transmissions, photographs, social media postings, letters, telegrams, facsimile, correspondence, contracts, agreements, electronic chat messages, text messages, WhatsApp messages, Signal messages, presentations, mechanical and electronic video or audio recordings or transcriptions thereof, images, notes, reports, memoranda, calendar notices, and minutes of telephone or personal conversations or conferences.

13. "Regarding" is used in its broadest sense to mean and include referring to, relating to, concerning, constituting, summarizing, reflecting, containing, evidencing, mentioning, stating, showing, discussing, including, involving, alluding to, and commenting upon.



14. "Referring to" means and includes, in whole or in part, directly or indirectly, analyzing, containing, supporting, concerned with, connected with, dealing with, constituting, describing, relevant to or pertaining to the identified person, document or subject matter.

15. "Person" or "Entity" means and includes any natural person or entity, including but not limited to any corporation, partnership, limited liability company, joint venture, firm, association, proprietorship, governmental agency, business, organization, and any employee, owner, law firm, attorney, or agent of the foregoing.

16. "Including" means "including but not limited to."

17. "And," "or," "any," and "each" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of these discovery requests any information, including documents, which might otherwise be construed to be outside their scope.

18. The terms "all" and "each" shall both be construed as "all" and "each."

19. The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

20. These definitions shall apply regardless of whether a term is capitalized.

21. Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most appropriate.

## INSTRUCTIONS

A. These Requests shall be deemed continuing, and You are hereby requested and instructed to provide supplemental responses that may hereafter be obtained by You or any person acting on Your behalf that will augment or otherwise modify in any way Your responses.

B. If You object to or otherwise refuse to answer any portion of a Request, You shall state the objection or reason for such refusal, and You shall provide all information called for by that portion of the Request to which You do not object or that You do not decline to answer as follows:

1. If You object to a Request on the grounds that to provide an answer would constitute an undue burden, then You shall provide as much of the requested information as can be provided without undertaking an undue burden and further identify the specific nature of the undue burden; and

2. If You object to any portion of a Request on the grounds that it is vague or indefinite, You shall set forth its understanding of the allegedly vague or indefinite term and shall then respond based upon that stated understanding.

C. If You cannot or do not respond any particular Request, or portion thereof, You must:

1. Identify any Documents which might contain information relevant to the answer sought; and

2. Identify any Person who may have knowledge of information relevant to the Request.

D. If You are unable to provide a complete response to a Request because the information sought is not known to You, the Request should nevertheless be responded to in so far

7

as possible, with an indication of what parts or portions of the Request You are unable to answer.

E. If You object to a Request, or portion thereof, on the grounds that it seeks privileged information or the information is subject to an immunity from discovery, You shall identify the basis for the claim of privilege or immunity, including:

    a. The author(s) or person(s) supplying the information;

    b. All persons to whom such information was and has been communicated;

    c. The form in which the information was communicated (letter, memorandum, tape-recording, etc.);

    d. The general subject matter of such information;

    e. The nature of the privilege or immunity asserted;

    f. The date(s) of said Communication and/or any Document(s) recording the information for which the privilege or immunity is asserted; and

    g. Sufficient particulars about the information to allow Claimants to evaluate the claim of privilege or immunity from production.

F. In responding to these Requests, You are required to make a diligent search for all Documents that are in Your actual or constructive possession, custody, or control wherever located.

A. You shall produce Documents in their entirety. If any Document in a Document family is responsive to a Request, You must produce all Documents within that Document family.

B. These Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular: (i) the use of the singular shall be deemed to include the plural; (ii) the connectives "and," "or," and "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all information and Documents that might



otherwise be construed to be outside of its scope; and (iii) the present tense or reference to present events shall be construed to include the past tense and reference to past events, and vice versa.

    C.    Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

    D.    If You object to any of the Requests, whether in whole or in part, on the grounds that the information sought therein is subject to a claim of privilege, You shall produce as much of the Document as to which no claim of privilege is made. With respect to Documents or portions of Documents for which a claim of privilege is made, You must identify the nature of the privilege (including work product) that is being claimed and the privilege rule being invoked, and provide an appropriate privilege log for any document withheld in its entirety or in part.

    E.    Unless otherwise agreed by the parties or ordered by the Arbitrator, provide all ESI in standard Bates-stamped single-page Group IV TIFF images or, to the extent a document is in color in its native application, in Bates-stamped single-page JPEG images, with accompanying text extraction in separate text files and metadata in a Concordance-compatible load file. To the extent You produce one form of a document, it need not be produced in another form; however, Claimants reserves the right to request native files for any document that is unreadable or has limited accessibility in the produced format (*e.g.*, MS PowerPoint, images, or databases). Produce all unredacted MS Excel, audio, audiovisual, and video files, in their native formats with an accompanying slipsheet in Group IV TIFF format.

    F.    Produce the metadata for any responsive ESI with the responsive data, including the following fields as appropriate for the file type: beginning and ending Bates numbers for the document and family; custodian(s); author(s); recipient(s); blind copy recipient(s); subject; document type; date and time an electronic message was sent and received; date and time a

9



document was created and last modified; time zone for all dates and times; original file name; file extension of the document; original file path to the file or mailbox folder structure; confidential designation endorsed on the document; whether the document is redacted; path to the native file as produced (if applicable); path to OCR or extracted text file; confidentiality designation; and MD5 or SHA-1 hash value of the file.



## **DOCUMENTS REQUESTED**

1. All Documents and Communications Regarding any actual, contemplated, planned, and/or proposed engagements, collaborations, partnerships, joint initiatives, and/or programs between You and Americor from January 1, 2024 through April 15, 2025, including collaborations, partnerships, joint initiatives, and/or programs regarding Marketing, Retention Marketing, and/or the provision and/or brokerage of "coupons," "deals," and "discounts." The involvement of a third-party (*e.g.*, a benefits broker or discount partner not associated with Americor or You) does not render otherwise responsive Documents and Communications non-responsive.

2. All Documents and Communications, including but not limited to, all emails, deleted emails, text messages, deleted text messages, chats and deleted chats (*e.g.*, WhatsApp, Signal, Slack, iMessage, or other chat applications), and other written Communications (whether electronically preserved or otherwise) for the period January 1, 2024 through April 15, 2025, that You sent to and/or received from Grant Eckert Regarding collaborations, partnerships, joint initiatives, and/or programs regarding Marketing, Retention Marketing, and/or the provision and/or brokerage of "coupons," "deals," and "discounts." The involvement of a third-party (*e.g.*, a benefits broker or discount partner not associated with Americor or You) does not render otherwise responsive Documents and Communications non-responsive.

3. All contracts, statements of work, invoices, master service agreements, insertion orders, Communications regarding any actual or contemplated agreements, and all other agreements (both formal and informal) between You and Americor for the period January 1, 2024 through April 15, 2025. The involvement of a third-party (*e.g.*, a benefits broker or discount partner not associated with Americor or You)—including as a signatory—does not render otherwise responsive contracts, statements of work, invoices, master service agreements, insertion



orders, Communications regarding any actual or contemplated agreement, and all other agreements (both formal and informal) between You and Americor non-responsive.

        4.    All Documents and Communications, including but not limited to, all emails, deleted emails, text messages, deleted text messages, chats and deleted chats (*e.g.*, WhatsApp, Signal, Slack, iMessage, or other chat applications), and other written Communications (whether electronically preserved or otherwise), regarding any in-person and virtual meetings, presentations, pitches, strategy sessions, and/or collaboration sessions between You and Americor. This includes, without limitation, any proposal(s) prepared for and pitch decks and other presentations delivered and/or co-delivered to Americor. The involvement of a third-party (*e.g.*, a benefits broker or discount partner not associated with Americor or You) does not render otherwise responsive Documents and Communications non-responsive. If anything related to business or a partnership was discussed at an otherwise social, offsite meeting, that meeting is responsive to this Request.

        5.    All Documents and Communications, including but not limited to, all emails, deleted emails, text messages, deleted text messages, chats and deleted chats (*e.g.*, WhatsApp, Signal, Slack, iMessage, or other chat applications), and other written Communications (whether electronically preserved or otherwise), Regarding the Arbitration. The involvement of a third-party (*e.g.*, a benefits broker or discount partner not associated with Americor or You) does not render otherwise responsive Documents and Communications non-responsive.

